The next case for argument is United States v. In. I would like to reserve three minutes for rebuttal, and I will do my best to respond. The officers in this case were confronted with a suspect parked in his car in a red zone just off the Las Vegas Strip. In that car, he had an unsecured gun within arm's reach, and when the officers asked him about that gun, he lied to them. This is the kind of moment that the Supreme Court has recognized is the most fraught with danger for officers conducting traffic stops. The moment in which contraband or evidence of a more serious crime is discovered, and the suspect might be motivated to resist apprehension with violence. This court has found, held rather, that officers may use reasonable precautions so that they can conduct their investigations safely. And in this case, it was eminently reasonable for the officers to handcuff Mr. In while they were conducting their investigation shortly after he lied to them about the gun that was just inside his unlocked car. Had he not lied about the gun, would your position be different? Well, I think events certainly would have unfolded differently, Your Honor. I think Officer Anderson Let me put it this way. I'm sorry. That was not artful on my part. Let's say events unfold the exact same way, but he never lied. The officer never asked the question, Is there a gun in the car, for instance? But they still handcuffed him. I mean, I'm trying to get at how important is that lie to the decision of the officers in your view? I do think it's quite important, Your Honor. I think had he not lied, I think it still might be a difficult case given the immediate accessibility of the gun. But in this case, Officer Anderson testified that typically lawful gun possessors tell officers that there is a gun in the car to mitigate safety concerns. In this case, the fact that he not only remained silent about it but lied about it suggests something of a guilty mind. Now, in the district court's initial order granting the motion to suppress, there's a fair amount of discussion about the fact that N didn't reach for the gun or didn't make furtive movements to conceal it, and therefore the officers somehow had no reason to be concerned about that possibility. And the government submits it. That's just plainly wrong. Suspects are not required and often do not give prior indication that they are going to resist arrest. And so for the officers to take it on faith that some sort of signal is going to be given ahead of time beyond N's dishonesty about the gun itself I think is just unreasonable. What is the relevance of the fact the gun wasn't holstered and where it was located? Just sort of strewn about with clothes it sounds like. Right. Does that matter? I think it does, Your Honor, insofar as all N would have to do were he still seated in the car or were he to gain access to the passenger compartment is just reach for the gun. He wouldn't have to take it out of a locked gun box as the officers testify lawful gun owners often possess their guns in. He wouldn't have to unholster it. He just needed to get it to hand as far as they knew. And that I think substantially elevates the danger presented by this immediately accessible firearm. Would it even be possible, you know, once he was removed from the car, I was looking at the video and the officer was just holding him by one hand. Do you think it's even possible that he could access the gun even outside the car? Well, I think that's a question we address a little bit in our briefs. I think it is unreasonable, I think, Your Honor, to rely on these officers' ability to physically overpower N. If he made the decision, I'm going to go for it. I might get arrested. I mean, at this point, N knows he's not a lawful gun possessor and he's potentially subject to arrest and prosecution. And that's the kind of moment, again, the Supreme Court says, suspects may be motivated to try and get out of going to prison in moments like this. And I think while we certainly acknowledge that the removal of N from the car was an important safety measure, as the Supreme Court has held officers can do just as a matter of fact under Pennsylvania v. Mims, but saying, as the district court did, that this eliminated all risk in going for this gun and accessing it, I think is unreasonable. And I think it's particularly unreasonable in light of the fact that we were so close to a heavily trafficked tourist area and these officers were on bicycles. How far was the strip? I saw the video, too, but I can't remember what the record said. Yeah, I apologize, Your Honor. I don't have, I believe, something like 50 feet, but I apologize. I don't have a number. But your view is if a firearm was discharged in that direction, it could have hit someone. You can see a stream of pedestrians in the background in the video, which I think was, as the officer testified, was a front-of-mind concern throughout this encounter. Can I ask, is the significance of being so close to the strip that protection of innocent bystanders or the fact that he could run away and flee in a big crowd? I think both, Your Honor. I think the case law does speak to handcuffs of precautionary measure can mitigate the risk of a suspect's flight or his use of violence. I think as a practical matter, the thought that a gun could be discharged and an innocent bystander struck is probably the thing that most officers are most worried about in their mission to protect the public. And so I think that certainly the testimony reflects that that was the front-of-mind concern. I mean, N certainly could have run as well, and that is a concern as well. But if N had gotten away, that wouldn't be the same sort of tragedy that an innocent bystander being struck with a bullet would be. And does it make a difference these officers are on bike? And I take it by bike, they actually mean pedaled bikes. Yes, these are bicycles. Bicycles, right. Yes. As opposed to, in other words, let's say they could have put him in a squad car. What would that have done to the analysis? Well, there's two different things that the squad car makes a difference of that are reflected in the officer's testimony. One, the officers did testify that they themselves are more vulnerable when they're on bicycles. They can't take cover behind a squad car. If a suspect tries to break away in a car, that's a concern for them. But I do think it is also, like Your Honor said, if a suspect can be placed in a squad car, that's a more secure position. Perhaps he could be left in there without being handcuffed and would have sort of a requisite amount of distance and obstacles between himself and the firearm. The officers might be more comfortable conducting the investigation that way. It just simply wasn't an option here. I see I am approaching time. Judge Gould, do you have any questions? No questions. Why don't you reserve the rest of your time? I'll reserve the remainder. Thank you very much. Good morning, Your Honors. May it please the Court. Lauren Tory on behalf of Appelli, Mr. Larry Inn. In this case, officers made a de facto arrest without probable cause in violation of the Fourth Amendment. We're asking that this Court affirm the District Court's ruling granting suppression. Here in this case, the circumstances involved a routine traffic stop for parking in a red zone and a broken taillight. This encounter does not involve any special circumstances within this Court's precedent that justifies intrusive measures that were used here. Counsel, I have a question for you on that. Isn't it a special circumstance if a person is uncooperative? Yes, Your Honor. In instances, there are some cases that are cited in the briefing that relate to individuals or suspects who are not compliant or combative. We don't have that here in this case. Here, Mr. Inn, as the District Court found, was fully compliant. When the officers asked him to keep his hands up, he did. When they asked him to exit the car, he did. He was calm. There were no furtive movements. He did not present a physical threat or risk of flight. But when he lies to the police officer about not having a gun in the car, does that make him not cooperative? Not in this case, Your Honor. Here, the District Court properly found that the only instance of a clearly false response came after the use of handcuffs. The other statement that was made by Mr. Inn when asked are there any weapons in the car before handcuffs were used was not clear. Let me ask you. Let's say we disagree with that. I mean, I've watched the video, and I have a hard time. I can understand there's a question as to whether he said it twice before he was handcuffed. As I think the government argued at one point. But to me, it's really clear he said it at least once before he was handcuffed, that he lied to the police. And I don't think it was his back and forth where he didn't understand what was going on. I mean, he answered. To me, he lied to the police. So if that's – I don't know where the other judges are. But, you know, if I believe that, what does that – what do I do with that given the judge's ruling here, the District Court's ruling? Yes, Your Honor. So in this case – How do you prevail if we determine there's a lie is a better way to put it? So as to the statements made by Mr. Inn, there is no precedent that the government relies on where this would justify intrusive measures. And here, even if the court finds that there is clear error as to the clarity of Mr. Inn's denial, the District Court correctly found that this doesn't change the analysis because the statements that were made did not increase the threat level to officers. Here, had Mr. Inn said something different that would create this perceived threat to the officer's safety, that would change the analysis in this case. But here, his unclear denial does not increase the threat. If he had a gun on his person and an officer asked him, do you have a gun on you, and he lied about it, don't you think that increases the danger? Yes, Your Honor, I do. Right. And so why is it different that the gun, although it's not on his person, is still accessible to him? So we agree with the District Court's finding that the gun was not accessible to him because, in this case, he was out of the car. He was not armed. He was not within reach of the car itself. How is that possible? I mean, he had one officer holding his one right hand. You know, he's still by the open door. The gun is behind the passenger seat. So if he just lunges back into the car, he could grab the gun and use it. I guess my point, how can the District Court make the finding that all that danger is eliminated? The District Court made the finding that there was a minimal risk, not that there was no risk of access, and that this minimal risk did not justify the use of handcuffs here because Mr. Inn was restrained the entire time. And when we look at Washington v. Lambert, we're looking at special circumstances that involve the suspect taking action at the scene that would give officers reasonable belief that they're at risk of safety. There were no actions taken by Mr. Inn that he would reach for the gun. And when you're saying he was restrained the whole time, are you talking about the one hand on the right hand? So he's removed from the vehicle. There's a hand on his wrist. They place him up against the car. Officer Diaz has both of his hands where Mr. Inn's hands are, behind his back. Both are restrained. Are both? Yes. I'm sorry. I just don't know if you could make the factual finding that he's completely restrained at that point because all he had to do was pull away. The District Court correctly found that Mr. Inn was restrained during the entirety. Both of his hands are behind his back, and there is a frisk and a handcuffing that are done simultaneously here in this case. When we look at the totality of the circumstances with an individual who is unarmed, the car itself and Mr. Inn are surrounded by three armed officers. That ratio does not justify the use of handcuffs when an individual is compliant. He is doing all the things. Counsel, are you saying that any time the police handcuff a suspect they think is dangerous that that amounts to a de facto arrest? No, Your Honor. This court's precedent is clear that handcuffs alone do not automatically convert a stop into an arrest, but in this case they did because of all of the circumstances present with an individual here who is abiding by officers' commands, is not showing any indication that he might flee, is not making any movements to reach into the vehicle. And this Court has also said in Thomas v. Rahr that the claim that a suspect could have charged past a deputy, grabbed the revolver in the back of the car in a matter of seconds, is weak. And that's because here in this case the District Court was correct to find that any danger that this firearm might have posed on the floorboard of the back seat was minimized after he had been removed from the car and restraint. But it's ultimately under the law, and I understand there are these special circumstances, but under Lambert it's a reasonableness test at the end of the day, right? That's correct, Your Honor. It is. And we know we have a traffic stop, which the Supreme Court has said and our circuit are especially fraught with danger to police officers. I looked at the Department of Justice, Criminal Justice Information Services Division, law enforcement officer death statistics over the last five years or so, and about 75 percent of felonious deaths on law enforcement comes from firearms. So you have an especially fraught circumstance. You have about 75 percent of felonious law enforcement officer deaths coming from firearms. You have somebody who lies to the officers, has a gun, sort of, in my view, recklessly, sort of, not secured in the vehicle. And so why isn't that just reasonable? Just standing back from all the tests, why isn't that just reasonable? To handcuff him for a period of time to figure out what's going on here. Officers are tasked with using the least restrictive measures available to them. When we look at this court's precedent and we look at instances when the court found that a Terry stop was not converted into an arrest, it involved instances where the suspect was presently armed. Officers were investigating a violent crime or they had reasonable suspicion that a violent crime might occur. Other instances where an individual is combative, not compliant, not listening to police officers' commands. We don't have those special circumstances here. And I would point, as Your Honor brought up, Washington versus Lambert. When it discusses the special circumstances that must be present, and as you said, it's a reasonableness test. It's not that they must be present, right? I mean, that's not a correct statement. I misspoke. It is a reasonableness test. We're looking at the totality here. But it did specifically state in Washington versus Lambert that one consideration is whether the suspect is currently armed. Mr. In was not armed. He was removed from the vehicle, and any perceived risk based on the firearm within that was neutralized after the officers took him out of the car. And that's consistent with this court's precedent when we look at Thomas v. Parr. But further, Washington versus Lambert states that under ordinary circumstances, using handcuffs violates the Fourth Amendment. The government needs to show and officers must have a reasonable belief that there is a safety concern that would justify the use of handcuffs that doesn't exist under these circumstances. Counsel, do you feel the gun on the backseat does not raise a safety concern? I believe that it raises a safety concern when Mr. In is in the vehicle. But the district court was correct that once he is removed and is patted down and found to be unarmed, that risk is significantly diminished. But if he breaks away from the officer holding his hands and the gun is on the backseat, can't he just grab the gun and start shooting? Under these circumstances, I think the likelihood of that is minimal because we have a vehicle that is surrounded by three armed officers with a suspect who is unarmed and placed on the curb. Well, that was after he was handcuffed. That's correct. What should the officers should have done once they realized he was lying about the firearms? We submit that the officers were not aware of any clearly false statements until or that Assuming we disagree with that part. Sure. In this instance, officers were permitted to remove him from the car, as the government stated under Pennsylvania versus Mims. They were permitted to frisk him to determine whether or not he was armed. Once they become aware that he is unarmed and he should be free to walk around? I think it's reasonable for the officers to place him on the curb and to create that distance between him and the vehicle. And here, that's what officers did. They also surrounded the car. What's the purpose of putting him on the curb? I'm sorry, can you repeat? What's the purpose of separating and putting him on the curb? I think that would assist the officers in creating distance from the car. What's the purpose of the distance? We agree that there is, and when we look at protective sleep cases, Risk of flight or danger? It's a risk of being in the vehicle and having the firearm within reach. Here, the firearm was not in reach, and officers unnecessarily handcuffed Mr. In. One more question. Could the officers have continued to hold him, his hands, through this whole period? So they don't handcuff, hypothetically. They just hold his wrists together. Is that a de facto arrest? Under these circumstances where you have an individual that is complying with police officers' commands, continued restraint is an intrusive measure that's unreasonable, given these circumstances. So, yes. Is your answer to that? Yes. Okay, so it doesn't really matter handcuffs were used. If they had kept holding him just like they did, and he wasn't handcuffed, you'd be in the same place. Well, Your Honor, in this case, the position is that it's simultaneous. They are removing him from the car, and so I'm not really concerned about that. I'm absolutely analyzing that part of it, because that's permitted under Pennsylvania v. MIMS. But once he's removed from the car and he's restrained, the officer is holding his hands behind his back and handcuffs him within seconds. Okay, but if he didn't handcuff him and kept holding his hands, we'd be in the same place, under your argument. I believe that's correct, Your Honor, because there needs to be. So we would have had to let him go, under your theory, to walk around. I think it would be reasonable for these officers to, as they did here, surround the vehicle and make it as if Mr. In was not able to gain access until they're ready to let him leave. And here Officer Anderson testified that unless they had found information that he had priors, he was only going to receive a ticket. And so when we look at protective sweep case law, the officers are permitted to perform methods that would make sure that they are safe when allowing the individual to reenter the vehicle and leave. Let me just check if Judge Gould had a question. My question is this. Is there any precedent in the Ninth Circuit about whether if an officer sees a gun nearby a suspect that we have to err on the side of safety of the officer? No, Your Honor. In fact, in cases where guns have been present, it's only – and the court has found that arrest is justified for the purposes of safety. It's only been when an individual is currently armed, and we don't have those facts here in this case. So, no. Here, when we look at what was present at this stop, we have a routine stop that did not present any reasonable suspicion of violent crime as well. Counsel, do you have any precedent of the Ninth Circuit that would say that your client was not armed when the gun was on the seat of the car? I cannot find a case on all fours with that, Your Honor. I would point this Court to United States v. Green. From this Court, their officers, the court found that there wasn't an arrest and that intrusive measures were justified there because, in that case, they drew their weapons on the individual, ordered him out of his car and frisked. But this was not an arrest because the individual was not compliant. He did not put his hands on the roof of the car when asked to do so. And here, there was a rifle in plain view in the backseat of the car. But that didn't enter into the Court's analysis here because there, the Court was more concerned with whether or not an individual who was failing to comply and a concern that they were armed based on a tip that had been provided, the Court found that there the intrusive tactics were reasonable. But why that's so different from our case is because we don't have any tip that Mr. N. is presently armed. We do not have an instance where he's failing to comply with officers' commands. And while there is a gun on the floorboard, he does not have reasonable access to that gun. Thank you, Counsel. Unless there's further questions?  Okay. Excuse me. I'd like to address what I think is an error of the District Court that really ties together a number of the threads that the Court has been addressing throughout argument today, which is the failure of the District Court to conduct its analysis from the perspective of a reasonable officer in the situation presented in the case before the Court, which is what this Court's precedents make very clear the District Court is supposed to do, and there's really no indication in the record that that is the analysis that was actually conducted. Now, it's one thing to say that a gun on a seat of a floorboard presents no risk of danger, with the benefit of hindsight or removal, but to the officers in the situation at the time, as they credibly testified, they were worried about it. And that was eminently reasonable for them to be worried. I think a similar thing could be said about what the District Court characterizes as the significance of the fact that N. repeatedly lied to them about whether or not he had a gun. Now, to an officer in that situation, being told, I don't have a gun when you know that's not true, is a valid source of concern. It is a valid basis for fears of safety that justify reasonable safety precautions. And so we would submit that it's really this continued error in the District Court's analysis that really runs through a number of these conclusions that it reached. I'm happy to answer any further questions that the Court may have. But if not, I'll submit and thank you for your time. Let me just check with Judge Gould. Any further questions? No further questions here. Thank you very much. Case is submitted.
judges: GOULD, BUMATAY, Seabright